Keanu Reeves
9024 Thrasher Avenue
Los Angeles, CA 90069
Phone: 316.237.3738
E-mail: Joan@JoanFarr.com

Joan E. Farr
P.O. Box 122
Webb City, MO 64870
Phone: 316.237.3738
Email: Joan@JoanFarr.com

FILED
NOV 16 2026
PAIGE WYMORE-WYNN, CLK
U.S. DISTRICT COURT
WEST DISTRICT
OF MISSOURI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant, and Joan Farr, individually *pro se*, | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. |
| United States Government, President Donald J. Trump, Department of Justice, United States Attorney General Todd Blanche, Former United States Attorney General Pamela Bondi, Federal Bureau of Investigation, Central Intelligence Agency, Internal Revenue Service, Alexandra Grant, Grantlove LLC, | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the plaintiffs, Actor Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant, and Joan Farr, individually *pro se*, and files this Complaint against the above named defendants. In support, plaintiffs state as follows:

## STATEMENT OF THE CASE

This case is actually a continuation of two writs which were recently scheduled to be heard by the United States Supreme Court. Plaintiffs adopt and incorporate all of the facts, laws and evidence pertaining to those cases into this matter which is an extension of plaintiff Joan Farr's initial claims and many of which now extend to Actor Keanu Reeves as well. To briefly summarize, Ms. Farr is a Christian widow on a fixed income who was scammed out of $11,500 by CIA posers pretending to be Actor Keanu Reeves during a seven-month period in 2023. Farr then tried to resolve it for months with his management, but they refused. Since she has not been able to acquire legal representation for 26 years due to government influence, Farr

filed suit *pro se* in the Western District of Missouri federal court on July 1, 2024 (Case No. 4:24-cv-00439-HFS). It was dismissed, and she then appealed to the Eighth Circuit Court of Appeals as Case No. 25-1525 which was denied. In March 2026, Farr then filed Writ of Certiorari Docket No. 25-1306 and Writ of Mandamus No. 25-1315 which were set to be heard by the United States Supreme Court. However, President Trump violated the separation of powers and influenced the high court not to hear her case.

On February 14, 2025, Farr had emailed a copy of her initial lawsuit to the real Keanu Reeves and he agreed that what she had written was exactly what had been occurring to him. He then realized that he had civil rights claims much the same as her, and that the government defendants had been depleting and converting both their assets to render them financially destitute for years. On June 4, 2025, he then signed a contract with her as his Manager/Legal Assistant/Personal Assistant to sue them, but she has been prevented from taking the job and being paid by the defendants who are using Alexandra Grant to do their dirty work.

Farr is not representing Reeves in this matter since she is not an attorney. However, no attorney will represent them for fear of being targeted by President Trump and/or his henchman, Alexandra Grant. They continue to hold Reeves in a hostage situation with bodyguards, allowing Grant to enslave and torture him using horrendous acts of crime against humanity, and Farr has been trying to free him through the courts for two years. They desire to get married and pursue a life together, but their civil rights continued to be denied. President Trump has known about this situation almost two years and has only acted to drag it out further.

## A. PARTIES

1. Plaintiff, Keanu Reeves, is a famous actor with residence located at 9024 Thrasher Avenue, Los Angeles, California 90069. Plaintiff, Keanu Reeves, files this case by and through Joan Farr as his his Manager/Legal Assistant/Personal Assistant since he is incapacitated. Plaintiff, Keanu Reeves, is hereinafter referred to as "Mr. Reeves," "Reeves," or the same.

2. Plaintiff, Joan Farr, is an individual representing herself *pro se* with residence located at P.O. Box 122, Webb City, Missouri 64870. Plaintiff, Joan Farr, is hereinafter referred to as "Ms. Farr," "Farr," or the same.

3. Defendant, the United States Government,* is a government entity with principle offices located at the Office of United States Attorney General Todd Blanche at his principle place of business, the Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530. Defendant, the United States Government may be served by and through the United States Attorney General Todd Blanche at his principle place of business: Department of Justice, 950 Pennsylvania Avenue N.W., Washington, D.C. 20530. Defendant, the United States Government, is hereinafter referred to as the same, "the government," "DOJ," "CIA," "alphabet soup," as well as any other known/unknown federal and/or state government agencies or actors.

4. Defendant, President Donald J. Trump,* is president of the United States, with principle offices located at 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20500. Defendant, President Donald J. Trump, may be served at his principle place of business: The White House, 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20500. Defendant, President Donald J. Trump, is also served by and through United States Attorney General Todd Blanche, at his principle place of business: Department of Justice, 10th Street & Constitution Avenue, N.W., Washington, D.C. 20530, and by and through U.S. Attorney Ryan A. Kriegshauser at his principle place of business: 400 East Ninth Street Room 510, Kansas City, Kansas 64106. President Donald J. Trump, is hereinafter referred to as "President Trump," "Trump" or the same.

5. Defendant, the Department of Justice and its agencies thereof,* is a government entity with principle offices located in Washington, D.C. Defendant, Department of Justice, may be served by and through the United States Attorney General Todd Blanche at his principle place of business located at: Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530. Defendant, the Department of Justice, is hereinafter referred to as the same, "DOJ," "CIA," "the government," "alphabet soup," as well as any other known/unknown federal and/or state government agencies or actors.

6. Defendant, United States Attorney General Todd Blanche,* is a government official with principle offices located in Washington, D.C. Defendant, United States Attorney General Todd Blanche, may be served by and through himself at his principle place of business located at: Department of Justice, 950 Pennsylvania Avenue NW, Washington, D.C. 20530. Defendant, United States Attorney General Todd

Blanche, is hereinafter referred to as the same, "Attorney General Blanche," "DOJ," "CIA," "the government," "alphabet soup," as well as any other known/unknown federal and/or state government agencies or actors.

7. Defendant, former United States Attorney General Pamela Bondi,* is a lawyer with residence located at: 901 South Rome Avenue, Tampa, Florida 33606. Defendant, former United States Attorney General Pamela Bondi, may be served by and through herself at her residence located at: 901 South Rome Avenue, Tampa, Florida 33606. Defendant, former United States Attorney General Pamela Bondi, is hereinafter referred to as "A.G. Bondi," "Bondi," "DOJ," "FBI," "the government," "alphabet soup," and the same, as well as any other known/unknown federal and/or state government agencies or actors.

8. Defendant, the Federal Bureau of Investigation and its state agencies thereof,* is a government entity with principle offices located in Washington, D.C. Defendant, the Federal Bureau of Investigation and its state agencies thereof, may be served by and through its FBI Director Kash Patel, at his principle place of business, the Department of Justice, 935 Pennsylvania Avenue N.W., Washington, D.C. 20530. Defendant, the Federal Bureau of Investigation, is hereinafter referred to as the same, "FBI," "DOJ," "CIA," "the government," "alphabet soup," any and all other known/unknown state actors within the government and its agencies thereof.

9. Defendant, Central Intelligence Agency,* is a government entity with principle offices located in Washington, D.C. Defendant, Central Intelligence Agency, may be served by and through the Director of the Central Intelligence Agency, John Ratcliffe,, at his principle place of business: CIA Headquarters, 1111 Colonial Farm Road, Langley, Virginia 22152. Defendant, Central Intelligence Agency, is hereinafter referred to as the same, "CIA," "Alexandra Grant," "Grant," "Grantlove, LLC," "Grantlove," "Keanu's management," "the government," "President Donald Trump," "President Trump," "Trump," "alphabet soup," the same, and any and all other known/unknown federal and/or state government agencies or actors.

10. Defendant, the Internal Revenue Service,* is a government entity with principle offices located in Washington, D.C. Defendant, the Internal Revenue Service, may be served by and through its Acting Chief Counsel, Kevin Salinger, at his principle place of business, IRS Office of Chief Counsel, Internal Revenue

Service, 1111 Constitution Avenue, NW, Washington, D.C. 20224. Defendant, the Internal Revenue Service, is hereinafter referred to as the same, "IRS," "the government," "alphabet soup," and any and all other known/unknown state actors within the government and its agencies therein.

11. Defendant, Alexandra Grant,* is an artist who has had a professional relationship with actor Keanu Reeves since 2008. Defendant, Alexandra Grant, may be served summons at Reeves' primary residence where she holds him hostage located at: 9024 Thrasher Avenue, Los Angeles, California 90069. Defendant, Alexandra Grant, is hereinafter referred to as "Grant," "Grantlove, LLC," "Grantlove," "Reeves' ex-manager," "CIA," "Central Intelligence Agency," "DOJ," "Attorney General Todd Blanche," "former Attorney General Pamela Bondi," "President Trump," "the government," or the same.

12. Defendant, Grantlove, LLC,* is a fake non-profit business entity with primary offices located at 1610 W. 7th Street, Los Angeles, California 90017. Defendant Grantlove, LLC, may be served by and through their owner and resident agent, Alexandra A. Grant, at Keanu Reeves' residence located at: 9024 Thrasher Avenue, Los Angeles, California 90069. Defendant, Grantlove, LLC, is hereinafter referred to as "Alexandra Grant," "Grant," "Keanu's ex management," "Central Intelligence Agency," "CIA," "alphabet soup," "the government," or the same.

*<u>**NOTE**</u>: Defendants the United States Government, President Donald J. Trump, Department of Justice, United States Attorney General Todd Blanche, Former United States Attorney General Pamela Bondi, Federal Bureau of Investigation, Central Intelligence Agency, Internal Revenue Service, Alexandra Grant and Grantlove, LLC are collectively known as "the government" or "government defendants." Plaintiffs also reserve the right to amend pleadings to comply with Federal and State Rules regarding newly discovered facts, to correct any deficiencies to defend against failure to state a claim or jurisdictional/venue requirements, and reserve the right to name other defendants who acted on behalf of the government who may become known through discovery.

## B. FACTS PERTAINING TO THE PARTIES

13. Plaintiff Joan Farr is a 71-year old widow who currently resides in Webb City, Missouri. She lives on a fixed income of $40,488 annually.

14. Ms. Farr is a resident of Jasper County in the state of Missouri which is in the United States of America. She resided in the Wichita, Kansas area for 61+ years prior to moving to Missouri in 2026.

15. Plaintiff Keanu Reeves is a 62-year old Hollywood actor who resides in Los Angeles, California.

His net worth in the film-making and entertainment industry was approximately $390 million dollars until Alexandra Grant illegally converted his assets to the CIA in 2109. Now his net worth is zero.

16. Actor Keanu Reeves is a Canadian citizen but has been a resident of Los Angeles County which is in the state of California for 40 years. He has been held hostage by the government for over six years.

17. Ms. Farr has been working for Mr. Reeves since June 4, 2025 as his manager/legal assistant/ personal assistant; however, the defendants have been preventing her from taking the job and from receiving her salary from him in the amount of $200,000 annually.

18. Defendant, the United States Government, consists of a President, his cabinet, Congress and various local, state and national actors and entities engaged in authoritative control and governance of the United States of America. The current president is President Donald J. Trump. The United States Government is represented in this action by 23 agencies, bureaus or offices. The principle members in this case are President Trump, the Department of Justice, Attorneys General Todd Blanche and Pamela Bondi, the Central Intelligence Agency, CIA operative Alexandra Grant, and other known/unknown government actors, employees, subcontractors and/or entities of the government.

19. Defendant, President Donald J. Trump, is the current president of the United States. His primary duties include ensuring the faithful execution of federal laws and especially those pertaining to the United States Constitution; however, just not seeing it.

20. Defendant, the Department of Justice (DOJ), is a federal executive department of the United States government responsible for the enforcement of the law and administration of justice in the United States. They also conduct surveillance on the American people using the FBI, CIA and other agencies which are commonly referred to as "alphabet soup" and their operatives were used by defendant U.S. Attorney General Todd Blanche and former U.S. Attorney General Pamela Bondi to violate plaintiffs' rights.

21. Defendant, United States Attorney General Todd Blanche, is the highest ranking government official responsible for enforcing the laws and administering justice in our country; however, he has been violating the laws and denying justice by conspiring with defendants Alexandra Grant, the CIA and President Trump to conduct illegal surveillance on plaintiff and actor Keanu Reeves to extort money from them, deny

them income, deplete their assets, and violate their civil rights to cause them emotional distress.

22. Defendant, the Federal Bureau of Investigation (FBI), is the domestic intelligence and security service of the United States, which simultaneously serves as the nation's prime federal law enforcement organization. Operating under the jurisdiction of the U.S. Department of Justice, the FBI is concurrently a member of the U.S. intelligence community and reports to both the U.S. Attorney General and the Director of National Intelligence. They also conduct surveillance on the American people.

23. Defendant, the Central Intelligence Agency (CIA), is a civilian foreign intelligence service of the United States Government. Defendant, the Central Intelligence Agency, is a member of the U.S. intelligence community and reports to the President of the United States, the Director of National Intelligence and in this matter, to the United States Attorney General. They engage in clandestine covert operations to cause their targets intentional emotional distress, extort money from them and even kill innocent Americans on American soil. Defendant, the CIA, used paid contractors as "posers" in this matter to conduct surveillance on plaintiffs to extort money from them, deny them income, deplete their assets, violate their civil rights and maliciously cause them intentional emotional distress and bodily harm to the point of near death.

24. Defendant, the Internal Revenue Service (IRS), is a federal executive department of the United States government responsible for administering and enforcing federal tax laws in the United States. There are two separate divisions of the IRS called the "Master File Unit" and the "Non-master File Unit," the latter of which was used by the government to target plaintiff Farr to willfully cause her financial hardship.

25. Defendant, Alexandra Grant, is a trans American artist who has had a business relationship with actor Keanu Reeves since 2008. Unbeknownst to him until February 2025, Grant has been a CIA contractor who fraudulently gained control over his income and assets in 2019 to help fund the CIA.

26. Defendant, Grantlove, LLC, is a fake non-profit organization begun in 2008 by defendant Grant to funnel money to the CIA/government with no record that they were ever a legal charitable organization.

27. All of the defendants are government actors and/or entities of the United States are supposed to be engaged in the duties and responsibilities of ensuring the constitutional rights of American citizens as required by their respective positions within government or as affiliates thereof. All of the defendants had

knowledge of this matter and were involved in the collusion, conspiracy, fraud, negligence, deprivation of rights and utrageous government conduct that ensued against plaintiffs in this matter.

## C. FACTS PERTAINING TO THE CASE

28. Until March 2026, plaintiff Joan Farr lived in the Wichita area for 60+ years. She had built a home there in 1994 with her husband for their family, and then he passed away at age 50 in 2006.

29. Ms. Farr paid off her home now worth over $800,000, and she wanted to live there until she died. She loved her home since it was filled with many special memories.

30. Farr incurred ongoing legal battles when she made the front page as the first woman builder in the area in 1999 and male builders sought to put her under. She was forced to handle them herself *pro se*, since no lawyer would represent her for the past 25 years.

31. She had become a devout Christian and founded a non-profit organization in 2003 called the Association for Honest Attorneys (A.H.A!). When Farr began to write a faith-based on-line newsletter, the government had the FBI issue a National Security Letter against her to put her on the terrorist watchlist.

32. The more she spoke the truth and tried to suggest we "do unto others" like the Bible says, the more the government persecuted her to deny her freedom of speech.

33. Since that time, the government has sought to destroy Farr emotionally, physically, spiritually, and financially. They targeted her and her family, defamed her, ruined her businesses, ran her out of money, caused her health problems, and her husband died from the stress in 2006.

34. This forced her to filed at least ten lawsuits and run for office seven times to try and get the NSL removed. Many other innocent people had come to her for help who were being falsely targeted as well.

35. After getting scammed by CIA posers for Actor Keanu Reeves in 2023, Ms. Farr filed her fourth federal lawsuit against the CIA, the government and others on July 1, 2024 (Case No. 04-24-cv-000439).

36. In August 2024, Farr discovered by talking to Reeves' fans on Facebook and over the phone that he was being harmed by Grant who appeared to be physically abusing him, strangling and tasering him, and threatening to harm his family members.

37. When she realized in early September 2024 that Reeves was actually being tortured by Grant at

the direction of the government and CIA, she filed a cease & desist motion to try and get the torture to stop.

38. However, 99-year old Judge Howard Sachs ignored all of her motions for five months and then dismissed her case allowing Reeves to suffer further. He should have retired at age 75 under Missouri law.

39. In early 2025, Farr appealed the matter as Case No. 25-1525, but it was also later denied by the Eighth Circuit Court of Appeals due to Judge Sachs' long-standing influence.

40. In late January 2025, Attorney General Bondi was about to be appointed by President Trump to run the DOJ and she contacted Farr by email. In a veiled attempt to settle her case, she offered Farr a job as "Co-Director of the Office of Public Trust"with Elon Musk and offered to have one of President Trump's attorneys help her settle her scamming case with Reeves' management in California.

41. Soon after, Reeves' attorney Scott Sims with Ziffren Brittenham LLP whom Farr had named as a defendant in her lawsuit contacted her to say that Reeves wanted her email address to apologize to her.

42. Farr then began corresponding with the real Keanu Reeves, and on February 14, 2025, she sent him a copy of her federal lawsuit she had filed.

43. Reeves was not aware until then that Grant was a CIA contractor for the government and that Attorney Sims, Ziffren Brittenham LLP, Patrick Whitesell with William Morris Entertainment, Inc. (WME), and Erwin Stoff with 3 Arts Entertainment were all part of a "schemed plan" to enslave and exploit him under contract for the purpose of funneling money into the CIA.

44. Reeves told Farr that just before Christmas in 2019, Grant had drugged him and he blacked out. The next morning, she showed him a legal agreement he had signed while under the influence which gave her complete control of his income and assets worth $390 million dollars from that point on.

45. From December 2019 on, the aforementioned conspirators forged Reeves' signature on all legal documents and contracts, and worked with the government defendants so that they all received a cut from the profits. They continued to dupe Reeves into believing he was legally bound to perform and control his assets.

46. Grant was the designated "slave master" to keep Reeves in line using threats to his family, drugs and torture to prevent him from escaping while fooling the public into thinking they were a couple.

47. Reeves began to fall for Farr, and he knew that she had been suffering financial hardship after

being scammed by Grant and the government. So in March 2025, he tried to help her out.

48. Since Grant and the government had complete control of his income, Reeves had a friend in Florida send Farr two cashier checks each for $4,890.99 by FedEx. However, the CIA intercepted the package and replaced the two cashier checks with fake ones, and Farr was unable to deposit them.

49. Farr managed to say "hello" to Reeves in person in May 2025 after she drove to the motorcycle races in Atlanta. Immediately, Grant had a huge bodyguard ensure they had no further contact.

50. Reeves then hired Farr in June 2025 to be his manager/legal assistant in a contract by email that President Trump's own lawyer helped her write (**EXHIBIT A**).

51. Reeves told Farr he wanted to pay her $200,000 annually; however, Grant would not allow Farr to take the position or be paid at all to willfully cause her further financial hardship.

52. A.G. Bondi sent Farr a preliminary job offer for her to start working for President Trump's team on May 2, 2025, but when Farr drove all the way to Washington, D.C. in late June, she refused to see her.

53. During this time, Farr was also the recipient of an inheritance of $310,000 by a man in the United Kingdom. However, A.G. Bondi acted to ensure that she never received it.

54. A.G. Bondi had designs on Reeves, and began working with Grant to try and steal him away.

55. But Reeves had fallen in love with Farr and proposed to her on September 3, 2025 by email. They tried to get married four times in September – November, but Grant and Bondi prevented it each time.

56. During this time, Attorney General Bondi had Grant torture Reeves repeatedly using physical abuse, drugging with Devil's Breath, strangulation, tasering, threats to harm his family, and food poisoning.

57. Reeves had rejected Attorney General Bondi's advances, so she was punishing him.

58. In fact, Attorney General Bondi conspired with Grant to poison Reeves' food so badly over Thanksgiving that he nearly died, and a doctor had to be called in to flush out his system.

59. In early January 2026, Grant rented an ice skating rink in New York City and drugged Reeves again with Devil's Breath, posting on social media so the public would keep believing they were a couple.

60. Farr was severely distraught at what was happening to Reeves, so on January 6, 2026, she packed up her car and drove to California intending to live there so they could be together and she could take the job.

61. A week later, Farr took a flyer to the Golden Globes and gave it to a member of management to try and help rescue Reeves from being held captive by Grant and the defendants (**EXHIBIT B**).

62. Farr ran out of money to stay and drove back to Kansas, but became very ill along the way. Upon arriving home, she laid in bed sick for ten days with Covid then sepsis and nearly died.

63. Farr realized Grant was angry that she'd contacted management at The Golden Globes, so she had her minions target her with Directed Energy Weapons (DEW) to cause her illnesses while she was there.

64. Reeves told Farr later that Grant had tortured him so badly because she had come to California that he asked Farr to help draw up his will for him. He wanted to leave everything to her.

65. Reeves planned to meet with a production company in Chicago to make a movie about Farr's father, an AF pilot that died in Viet Nam trying to save the life of his wingman. On Feb. 5, 2026, A.G. Bondi tipped off Grant who then flew Reeves from California to New York so he couldn't make the meeting.

66. Grant and the government defendants have continually prevented Reeves from meeting with the production company for the past nine months to prevent the movie which has cost him millions in revenue.

67. Farr had had enough, so on March 2, 2026, she filed her writ with the United States Supreme Court (SCOTUS) by mail. However, the government had the court send it back to her twice for "errors."

68. Shortly after this, a former CIA contractor who had trolled Farr for years commented in support on Facebook of her efforts to rescue Reeves. He told Farr on messenger that he had taken President Trump's buyout for all CIA agents offered in March 2025, that there were ten CIA agents watching her, and that they were hitting her with DEW and chemtrails to give her cancer and other illnesses.

69. He told her that the government was keeping her and Reeves from getting together for fear his career would skyrocket. After this, the government defendants blocked her from getting on Facebook at all.

70. In early March, another ex-CIA informant emailed Farr to warn her of a 'grand attack' on her by Grant and the CIA coming in April. They said that they could no longer stay silent after all they knew had been done to her, that she was going to lose everything.

71. The informant admitted to Farr that they were part of the CIA effort to funnel her past online campaign donations to the government during her six campaigns. They told her there were A LOT.

72. Farr had run for governor of Kansas in 2010, United States Senate in Oklahoma in 2014 & 2020, United States Senate in Kansas and Oklahoma in 2022, and for President in 2024 but hardly anyone knew. The government made sure she got almost no publicity and blocked the donation buttons on her campaign websites each time, so she had to use mostly her own money to campaign. They'd stolen her elections.

73. The previous CIA contractor also confirmed to Farr that the government would likely cause a lightning strike on her home in Kansas since they knew she'd let go of her homeowner's insurance the year before. Both informants believed the government defendants intended to burn Farr's house down.

74. Farr knew she had to flee to save her life, so she arranged to get an apartment in Missouri. The government had prevented her from selling her $850,000 home in Kansas for 19 years prior, and a seasoned realtor/auctioneer told her she wouldn't get more than $425,000 from an investor.

75. Farr hired an estate sale company who made promises but then engaged in deceptive acts and practices, canceled her sale the last day, stole her antique dolls and then kept the proceeds when they knew she needed the money right away before moving to Missouri. This caused her great distress.

76. On the last day of Farr's estate sale, the government defendants hit Farr's son with DEW continuously for eight hours. He suffered symptoms similar to a heart attack with severe chest pain and numbness in his left arm, and caused him sleep deprivation.

77. Farr suffered severe mental anguish and emailed A.G. Bondi and Grant to tell them to 'cease & desist' targeting her son with DEW or she'd be suing the government again for the fifth time in five years.

78. By the time Farr fled to her small apartment in Missouri, she had so little money that she was forced to pawn her $20,000 wedding ring when she got there for $2,500.

79. After President Trump learned of Farr's writ that she had filed, he took Attorney General Bondi on a ride to SCOTUS and fired her on the way back. Attorney General Todd Blanche then took her place.

80. However, he picked up where A.G. Bondi had left off only pretending to resolve her case. He kept insisting Farr had to pay back IRS taxes she didn't owe and also pay Grant $15K so she could flee (?).

81. On April 15, 2026, Grant blocked Reeves' and Farr's meeting with the production company again. During this time, Farr's breast lumps worsened from DEW the government had used to target her.

82. Farr had been incurring skin cancer issues caused by the DEW, and now the appearance of breast cancer made her sink deeper into depression, anxiety, insomnia and isolation.

83. A.G. Blanche would never tell Farr how much she owed in IRS taxes, so she tried to pursue this through Senator Josh Hawley's office. The IRS was part of the "schemed plan" to drag this matter out.

84. In mid-May, Farr filed another writ of mandamus in conjunction with her writ to try and help Reeves get free. It was assigned Docket No. 25-1315, but she had to title it "In Re Joan Farr" since the United States Supreme Court clerk said she could not mention Reeves' name in the caption.

85. It was in June that the former CIA contractor advised Farr that he was told SCOTUS was going to hear her cases, that four justices were in her favor and she only needed one more to win. She was elated!

87. During this time, Reeves contacted some wealthy businessmen he knew in Kansas and they offered to help Farr try and resolve her case with the government defendants.

88. A.G. Blanche led Farr to believe that she would meet with the DOJ on July 25, 2026 to settle her and Reeves' cases. However, this effort failed again and was another "bait-and-switch" instead.

89. President Trump had also retaliated against his own attorney who helped Reeves and Farr draw up their contract and for taking their side. He had him targeted with DEW to cause him to develop a tumor.

90. On June 13, 2026, Farr noticed that the government removed her entire writ that she had filed for Reeves (25-1315) titled "Joan Wick Writ for JW" from her word file and also as a pdf in her downloads.

91. A.G. Blanche continued to tell Farr that she had to pay off the $109K in taxes she didn't really owe to the IRS before they could settle and bring her in for a government job, since it was "bad optics" and the public would think she didn't pay her taxes. But he wouldn't tell her how much she owed.

92. Blanche even told her that President Trump had agreed to award her father the Medal of Honor which she had been trying to get him for 20 years for trying to save his wingman's life.

93. Farr had to work through Senator Josh Hawley's office from April - July, and it took 73 days for the IRS to give her the amount they said she owed. It finally came back as $109,027.85.

94. Farr had always known this amount was fictitious and she really didn't owe it. The lien that Senator Inhofe had the IRS devise in 2021 just for running against him showed taxes assessed against her in

1950 when she wasn't even born until 1955 (**EXHIBIT C**).

95. Farr loved her home in Kansas and didn't want to sell it to pay off taxes she didn't really owe. But she knew that it was the only way that she and Reeves could finally be together.

96. So Farr had to find an investor quickly and on August 19, 2026, she sold her $850K home in Kansas for $290K to pay the IRS $109K. Losing her home and $500K caused her severe depression.

97. But Farr was excited that she and Reeves would finally be together, so she refocused to rely on Blanche who told her the German police had been brought over to arrest Grant for her crimes. He said this would occur on August 22, 2026, Farr would be picked up the next day at 4:20 p.m. and their settlement meeting would be Monday morning August 24, 2026 in D.C. In addition, the movie production company would film the Medal of Honor ceremony, and she would have dinner with President Trump that night.

98. Blanche even told Farr that they were going to bring her in as Vice-President under the 25th Amendment, Vance would resign, and then she and Reeves would become President and First Gentleman.

99. Unbeknownst to plaintiffs, Grant was taken in by the German police but never actually arrested.

100. On August 23, Farr spent most of the day packing and getting ready to meet Reeves at long last. However, Grant emailed her at 4:21 p.m. to say that she had intercepted her driver who wouldn't be coming, demanded $20,000 and a plane to get out or she was going to dose Reeves every hour with a drug that would make him sterile after 12 does and a second drug that would cause him to forget her altogether.

101. Farr later wondered why the government defendants had allowed Grant to keep her phone if she had been arrested by the German police and was in custody. She then realized that President Trump and A.G. Blanche had engaged in **subterfuge** to thwart their own plans in another arrogant "bait & switch" to waste time, resources and taxpayer money just so they could put one over on plaintiffs.

102. President Trump was operating from his playbook he had written called "The Art of the Deal" in which he advocates winning at all costs and no matter who gets hurt.

103. During this time, Grant also threatened the family of a private investigator working for Reeves and Trump's lawyer, and they had to be taken to a place of safety.

104. It then became even more clear to plaintiffs that all the government defendants cared about

was "W.O.M.P. – "Winning, Optics, Money, Power" and innocent lives lost meant nothing to them.

105. Farr had no choice but to wire transfer the money to Grant so that Reeves would not be harmed. She even gave her $1000 extra for a total of $21,000 in the hopes that she would leave the country as she promised so that she and Reeves could finally have a life together..

106. On August 26, 2026, Farr drove to St. Louis, Missouri to see Reeves in concert which Grant said she could attend. But Grant was continually manipulating Farr's GPS so she'd get lost, she was pulled over for speeding, had a panic attack, then got in at 1 a.m. so stressed she didn't sleep at all that night.

107. Farr was so excited to finally see Reeves at his concert, but Grant had police pull her out of the line and threaten to arrest her for trespassing. They forced her to leave and then harassed her further.

108. The wealthy Kansas businessmen tried to meet Farr at a St. Louis hotel the next day, but the government defendants acted to ensure that this meeting was canceled as well.

109. On September 2, 2026, Farr was told that she needed a lien release from the IRS to close on the sale of her rental home in Tulsa. Even though she had just closed on her home in Kansas two weeks prior and they could see that the IRS had cashed her check for $109K, it wasn't good enough.

110. On September 21, 2026, the wealthy Kansas businessmen flew their private plane to Joplin, Missouri to meet with Farr and help her settle with the government defendants. A.G. Blanche had even confirmed with Farr by email that he and President Trump would attend.

111. However, they did not show up and instead, sabotaged their meeting by instructing air traffic controllers at three airports not to let their plane land for "security reasons."

112. This outrageous conduct interfered with their prospective business advantage and resulted in a further waste of time, money and resources for the businessmen and plaintiffs.

113. It was in late September when it dawned on Farr that the government defendants had been violating consumer fraud laws using deceptive "bait & switch" tactics, promising to settle but then reneging to distract her so that the six-month statute of limitations would be up and she would forget to file this suit.

114. Also in late September 2026, the former CIA contractor advised Farr that the reason the government would not arrest Grant is because she had dirt on three of President Trump's cabinet members,

was friends with Ghislaine Maxwell, and she had blackmail evidence involving Jeffrey Epstein.

115. After hours on the phone with the IRS to no avail, Farr lost the sale of her Tulsa rental home on September 29, 2026 and over $100,000 in profit.

116. Reeves had been trying numerous times to wire transfer Farr her back pay of $240,000 and $16,700 per month through his banker, but Grant and the defendants blocked each wire transfer attempt.

117. Around this time, Farr's ex-CIA friend reconfirmed that SCOTUS would hear her case.

118. So plaintiffs began to make plans, and on October 3, 2026, Farr flew to Los Angeles to find a place so Reeves could move out of his house where Grant was holding him hostage and stay with her. Farr found a condo but was denied after they contacted WME and Ziffren who said she didn't work for Reeves.

119. While visiting Los Angeles, Farr drove to Reeves' home hoping he might leave with her to try and rescue him. However, he was heavily guarded by Grant's goons who refused to let her in to see him.

120. Farr later learned that Grant had severely tortured Reeves again just for this reason.

121. While she flew back to Missouri on the morning of October 10, 2026, the wealthy Kansas businessmen helped extract Reeves from his home and then gave him a ride on their plane to Kansas. They then intended to fly him to meet Farr in Missouri, and this had been approved by Trump and Blanche.

122. However, they pulled another "bait & switch" and when they landed at Springfield, Missouri on October 10, 2026, they had the investigator detained and Reeves sent back to California for more torture.

123. The wealthy businessmen emailed Farr that the only way to achieve a settlement [or ever be with Reeves] would have to be with government [President Trump's] approval.

124. On Oct. 14, 2026 Farr drove to Tulsa to attend Reeves' concert and was denied entry again by security even though she had a ticket. The next day she mysteriously acquired food poisoning at her hotel.

125. A.G. Blanche then told Farr he thought President Trump would meet with Farr on October 18, 2026 since he was coming to Wichita for a rally. However, Trump refused to again to meet with her.

126. On or about October 19, 2026, Farr's CIA friend told her that SCOTUS had denied both of her writs back on October 5, but she never received confirmation denying her writ of mandamus.

127. It then became aware to Farr that President Trump had made a deal with unknown government

actors to ensure that SCOTUS would deny hearing both of her writs and in exchange, he would agree to settle Farr's case and Reeves' pending lawsuit. But since he reneged and again engaged in "bait & switch," this caused Farr to file this suit to try and free Reeves, her fifth one against the CIA and others in six years.

128. President Trump clearly violated the separation of powers by having government actors influence the high court not to hear Farr's case.

129. Soon after, Farr found out that she really never had to sell her house to pay the $109,027.85 in taxes. The title company told her that if the IRS does not try and collect after ten years, it goes away.

130. On or about October 21, 2026, Blanche finally had an "aha!" moment and realized that Trump had been taking the law into his own hands and conveyed this to Farr. He told her he was taking steps to ensure Reeves's safety, that they would arrest Grant and finally settle with them both. But he never did.

131. On or about October 25, 2026, President Trump stated at a rally that he gets sued all the time and he doesn't give a sh*t if anyone sues him.

132. It was two days later when Farr learned that President Trump and A.G. Blanche had allowed Grant to come back to Reeves' home in Los Angeles, just to be mean and spiteful toward Farr.

133. Farr tried to call numerous civil rights lawyers in the Kansas City area for assistance in filing this suit, but they declined. They were worried about retaliation toward them by President Trump.

134. Farr has continued to lose the sale of her Tulsa rental house due to failure of the IRS to issue a lien release or statement that no further taxes are owed. Trump and Blanche have continued to block this.

135. At least sixteen times total, Attorney General Bondi and then Attorney General Blanche told Farr they were bringing her in to take a government job and settle but at the last minute, did a "bait-and-switch" to cancel which is in violation of consumer protection laws regarding deceptive acts and practices.

136. This is outrageous conduct since <u>all</u> state attorney generals beneath them are supposed to be enforcing these laws. Trump's team has touted investigating fraud but they need to investigate themselves.

137. President Trump has also dragged this case out because he was worried plaintiffs' cases would result in "bad optics" and sink his control of Congress at the midterms in November 2026.

138. Since February 2025, the government defendants conspired to keep Farr and Reeves apart

while stringing them along to buy time and make Farr think that they were settling her prior case so that the statute of limitations would run out for her to help Reeves file his own suit against the government.

139. The government defendants conspired in a "schemed plan" to demand that Farr pay over $109,000 in taxes she didn't really owe so she would lose her home of 32 years, and then kept the IRS from providing a lien release so she couldn't close on her rental house in Tulsa and lose over $100,000 in profit.

140. President Trump deplores poor people, he feels they made bad choices and got themselves that way. In his mind, he and the government bear no blame; Farr is poor for this reason and Reeves is a rich man who caused his own poverty so it is beneath him to settle with them.

141. Farr's previous FTCA claim filed Oct. 17, 2025 was denied by the FBI on November 24, 2025 where she mentioned Reeves but was not representing him. Another FTCA claim for him is not needed since his constitutional rights were violated and the courts are already aware of his claims due to Farr's writs. Trump would have gotten it denied anyway, and there is an urgent need to free Reeves from his captors now.

142. Farr is six months late filing this case to include her own ongoing claims under FTCA, but she was waiting to see if her prior case would be heard by SCOTUS before she filed this one to include Reeves.

143. Notwithstanding, plaintiff Keanu Reeves is still within the two-year statute of limitations for filing this federal suit, since it began to run on February 14, 2025 when he read a copy of Farr's case #4:24-cv-00439 and realized that he had the same civil rights/fraud/negligence claims that she had.

144. For the past 22 months, the government defendants have continued to allow Reeves to be enslaved and tortured by Grant while causing Farr health issues, the loss of her home and depletion of assets.

145. Time is of the essence to free Reeves, and Farr hopes this is ordered into MAP immediately.

146. The government defendants had also continued failing to arrest Grant for her crimes to enslave and torture Reeves, using it as a tool of manipulation to keep the public from knowing the truth – that they had driven a widow into poverty for 26 years and exploited a Hollywood actor to convert his assets to them.

147. President Trump willfully and intentionally instructed A.G. Bondi and A.G. Blanche to drag this matter out past the statute of limitations so Farr would lose when she filed it. He was spiteful and jealous, also believing that if Farr became president, she and Reeves would be more popular than him.

148. In August – September, Farr suffered extreme emotional distress having lost the home she built and love along with $757,000 in property and assets in the space of three weeks.

149. In addition, she lost her antique doll collections and collectibles she had been collecting for 65 years, money from the settlement of this suit, the job working for the government offered at $93K annually, payment as Reeves' manager/legal assistant amounting to approximately $250K, an inheritance from a man in the U.K. of $310K, significant donations to her non-profit A.H.A! and campaign donations that had been funneled to the government for over 23 years, suffering from skin cancer, breast cancer, Covid and sepsis from D.E.W., paranoia, anxiety, panic attacks, nightmares, insomnia, and severe depression.

150. Reeves suffered extreme emotional distress and severe bodily harm while being in a hostage situation held by Grant and the government defendants for over six years, (the worst being from February 2025 – present during his relationship with Farr) who engaged in CIA mind control, repeated drugging by Devil's Breath to make it appear that he and Grant were in a loving relationship, torture, tasering, physical abuse, strangulation, threats to his family, stealing his phone to cause him anxiety and panic attacks (Stockholm Syndrome), and poisoning his food continually such that he nearly died. Reeves also continues to suffer from paranoia, anxiety, panic attacks, nightmares, insomnia, and severe depression.

151. Grant and the CIA had conspired with the government defendants and actors in a "schemed plan" to convert and deplete Farr and Reeves of their income and assets to cause them intentional emotional distress and bodily harm. They relied to their detriment on the government defendants who lied repeatedly.

152. The government defendants' acts and failures to act amount to war crimes and legalized stealing, resulting in a significant loss of income and assets to drive a widow into poverty and cause a famous actor worth $400 million to be enslaved and penniless. They were desperate to hide this from the public.

153. The actions of the defendants in this matter were willful and wanton and with malice toward plaintiffs to cause Reeves and Farr to remain prisoners of the CIA/government. Their acts and failures to act were intentional to keep plaintiff Joan Farr from winning her case and the public from knowing that the government had engaged in crimes against humanity toward her and Reeves for years.

154. Defendants President Trump, A.G. Bondi and Alexandra Grant in particular, maliciously

dragged this matter out to intentionally cause plaintiffs further mental anguish and emotional distress.

155. Plaintiffs trusted in the government defendants to keep their word to resolve this matter, and relied to their detriment. This matter is *in terrorem populi* – "to the terror of the people."

156. Plaintiffs are justified in their claims involving denial of freedom of speech and retaliation under the First Amendment; the right to privacy under the Fourth Amendment; due process of law under the Fifth Amendment (as applied to the states through the Fourteenth Amendment which includes their right to equal protection), and war crimes pursuant to 42 USC 1983, 18 USC 242 and 18 USC 2441.

157. All of the defendants violated plaintiffs' rights under the Fifth Amendment by prolonging this matter without good cause to deny them due process of law with the objective of depleting their income and assets as a retaliatory measure. They engaged in conspiracy/collusion, fraud and misrepresentation, gross negligence, intentional fraud and concealment which caused plaintiffs to rely to their detriment so that they suffered emotional distress and bodily harm.

158. Plaintiffs have totally exhausted all administrative efforts in demanding that defendants take action to make them whole for their losses. Defendants have continually refused plaintiffs' demands.

## LAW AND ANALYSIS

All of the defendants violated numerous national laws, statutes, ordinances and regulations, including but not limited to: denial of plaintiffs' right to freedom of speech under the First Amendment, the right to privacy under the Fourth Amendment, the right to due process of law under the Fifth Amendment (all of which are incorporated to the states through the Fourteenth Amendment), equal protection under the Fourteenth Amendment to the United States Constitution, 42 USC 1983 Denial of Rights Under Color of Law, 18 USC 242, illegal surveillance in violation of FISA and the Patriot Act Section 215, extortion, crimes against humanity including enslavement and torture under the War Crimes Act, 18 USC 2441, conspiracy/ collusion, fraud, intentional fraud, negligence/gross negligence, intentional emotional distress, detrimental reliance, violations of bait & switch and other deceptive acts and practices under the consumer protection laws, elder abuse laws (EADACPA), obstruction of justice, abuse of power, outrageous government conduct/tort of outrage, and especially Farr and Reeves' inalienable right to "life, liberty and the pursuit of

happiness." The *doctrine of special circumstances* applies in this matter, since Farr has not been able to acquire legal representation for 25 years, Reeves is incapacitating and doesn't trust anyone but Farr to help him and attorneys fear they would be targeted as well by President Trump. In addition, he also violated the separation of power laws by influencing the United States Supreme Court not to hear Farr's case.

Denial of Rights Under Color of Law 42 USC 1983 states that if any person under the color of any statute, ordinance, etc. causes any other U.S. citizen to be deprived of any rights shall be liable to the party injured "in an action at law, suit in equity, or other proper proceeding for redress." This applies to the plaintiff through the states under the 14th Amendment, since "all persons shall not be deprived of ...**life, liberty**, or **property** without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amdt. 14, § 1. Plaintiffs allege concerted action between federal, state and local defendants to violate their rights under color of law by their own willful and malicious conduct.

The government defendants conspired and acted in privity to deprive plaintiffs of their rights by participating in a covert "schemed plan" to deprive them of their assets, threaten the lives of Farr and Reeves and keep them from meeting, and averting any publicity concerning this egregious matter. They were able to accomplish this due to her falsely issued National Security Letter which put her on the terrorist watch list years earlier. The overt acts of intentional fraud in this matter include, but are not limited to: telephone calls, e-mails, communications, meetings and "mental processes" using artificial intelligence to illegally extort Reeves' and Farr's assets; illegal surveillance to monitor their phones and computers, block the donation and contact buttons on her websites; scam her out of over $11,500 to cause defamation using artificial intelligence and CIA minions posing as actor Keanu Reeves and his management/security. The government defendants clearly exceeded the scope of their employment, authority and function as government officials/ agencies and both monetary and punitive damages are warranted, as well as injunctive relief under 42 USC 1983 and 18 USC 242. The defendants also violated Executive Order 12333 which President Biden signed in 2024 for the United States Attorney General to work with the CIA on issues so there is compliance and they don't violate state and federal laws.

The defendants' deceptive and malicious acts in privity against plaintiffs Reeves and Farr are

indicative of war crimes/crimes against humanity involving enslavement, torture, legalized stealing and unwarranted and illegal harassment. The federal court has jurisdiction in this matter under 28 U.S.C. 1331 and supplemental jurisdiction under 28 U.S.C. 1367(a) since plaintiffs are suing the United States government, departments, agencies, actors and affiliates and because Constitutional rights were violated. The overt acts engaged in by the defendants to deprive plaintiffs of their assets include, but are not limited to: participating in a devious plan to target plaintiffs Farr and Reeves to deplete their income and assets and drive them into poverty, conspire and collude with Reeves' attorneys and members of management so that he was given ineffective assistance of counsel to defraud him, convert his assets, prevent him from making a movie about Farr's father which would have grossed millions, exploit and torture him, engaging in meetings, telephone calls, correspondence, texts, e-mails, and other communications to illegally deprive both of them of their property and assets. These communications were the overt acts used by the defendants to deny plaintiffs their freedom of speech, right to privacy, due process and equal protection heard and influence other state and government actors to go along with their retaliatory plan to violate their rights.

Since neither Farr nor Reeves is able to acquire legal representation due to the fact that he is being held hostage and no lawyer wants to get targeted like they have been, the *doctrine of special circumstances* applies in this matter as the legal principle by which Farr seeks to help him file this suit by and through herself as his manager/legal assistant/personal assistant. This case warrants claims involving bad faith, manifest injustice and obstruction of justice due to the defendants' acts and failures to act in their conduct toward plaintiffs. Accordingly, they are justified in alleging each of the following claims against them.

## C. CAUSES OF ACTION

**NOTE**: For each of the following claims against each defendant, plaintiff respectfully requests judgments of the court against all of the defendants awarding to her (i) damages in excess of $75,000 ($250,000 for tort of outrage) against each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees for this action; (iv) injunctive relief enjoining the above named defendants from continuing to violate their civil rights/right to equal protection; and (v) any other relief deemed just and equitable by the court.

### 1. Violations of Plaintiffs' First Amendment Right to Freedom of Speech (as Incorporated to the States through the Fourteenth Amendment)

159. Plaintiffs incorporate by reference paragraphs 1 through 158 of this Complaint.

160. The conduct of the defendants to act in privity and willfully participate in a "schemed plan" to engage in unwarranted and illegal domestic surveillance without good cause and without a warrant to deny plaintiffs Farr and Reeves their right to freedom of speech by blocking their incoming and outgoing emails, taking away Reeves' phone, preventing them from meeting, speaking on the phone, or meeting with the Koch plaintiffs to settle this matter and retaliating toward Farr and Reeves to keep them apart to cause intentional emotional distress constitutes a violation of plaintiffs' right to freedom of speech,

161. The conduct of the defendants to participate in unwarranted and illegal domestic surveillance to target plaintiffs Farr and Reeves was to engage in a covert operation to deprive them of their income and assets, deny their civil rights, keep them from meeting or talking by phone, prevent publicity, engage in threats and intimidation toward them and others, and continuously preventing them from meeting to settle this matter deprived plaintiffs of their right to freedom of speech under the First Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment and pursuant to color of law 42 USC 1983 and 18 USC 242.

162. The defendants owed plaintiffs a duty not to violate their right to freedom of speech under the aforementioned laws <u>and exceeded the scope of the government defendants' authority and function.</u>

163. The defendants breached their duty owed the plaintiffs.

164. As a result of the defendants' conduct in violating plaintiffs' right to freedom of speech, they have suffered harm and damages in excess of $75,000.00.

### 2. Violations of Plaintiffs' Fourth Amendment Right to Privacy (as Incorporated to the States through the Fourteenth Amendment)

165. Plaintiffs incorporate by reference paragraphs 1 through 164 of this Complaint.

166. The conduct of the defendants to act in privity to willfully participate in a "schemed plan" to engage in unwarranted and illegal domestic surveillance under the FBI National Security Watchlist without good cause violated plaintiff's right to privacy under the Fourth Amendment to the United States

Constitution as incorporated to the States through the Fourteenth Amendment.

167. The conduct of the defendants to participate in unwarranted and illegal domestic surveillance to target plaintiffs Farr and Reeves was to engage in a covert operation to deplete and convert their income and assets to the government, prevent them from meeting or speaking, delete Farr's Word file of Reeves' writ of mandamus (No. 25-1315), prevent any publicity, manipulate Farr's GPS so she would keep getting lost, intercept money mailed by Reeves to Farr, and monitoring all of plaintiffs' emails deprived plaintiffs of their right to freedom of speech under the First Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment and pursuant to color of law under 42 USC 1983 and 18 USC 242.

168. The defendants owed plaintiffs a duty not to violate their right to privacy under the above laws and exceeded the scope of the government defendants' employment and function.

169. The defendants breached their duty owed the plaintiffs.

170. As a result of the defendants' conduct in violating plaintiffs' right to privacy, they have each suffered harm and damages in excess of $75,000.00.

**3. Fifth Amendment Right to Due Process of Law**
**(as Incorporated to the States Through the Fourteenth Amendment)**

171. Plaintiff incorporates by reference paragraphs 1 through 170 of this Complaint.

172. The conduct of the defendants in depriving plaintiffs of their property (income and assets) without due process of law constitutes a violation of plaintiff's rights under the Fifth Amendment to the United States Constitution, as incorporated to the States through the Fourteenth Amendment.

173. The conduct of the defendants to act in privity and willfully and maliciously participate in a "schemed plan" to deny the plaintiffs' right to be heard without due process of law constitutes a violation of plaintiffs' rights under the Fifth Amendment to the United States Constitution, as incorporated to the States through the Fourteenth Amendment.

174. The defendants owed plaintiffs a duty under the Fifth and Fourteenth Amendments not to violate their rights under the United States Constitution as citizens of the United States. Their overt acts of fraud included denying them due process of law include but are not limited to: engaging in meetings, phone

calls, emails, communications and correspondence with Grant to keep plaintiffs Farr and Reeves from meeting so that she couldn't help Reeves file this suit and then to keep them from settling this case for the past 22 months; engaging in the same to influence Reeves' attorneys and management that the fraudulent contract he signed in 2019 when Grant drugged him was legal and binding, failing to give Reeves' effective assistance of counsel for seven years thereafter so that he would remain compliant in order to keep funding the government/CIA, refusing to arrest Grant for her crimes for 20 months after the DOJ determined the case against her was nearly 'airtight,' and engaging in subterfuge to keep the plaintiffs from meeting with the Koch plaintiffs to settle this case so they would needlessly lose time and money.

175. The conduct of the defendants to participate in a conspiracy to deprive plaintiffs of their income and assets and their right to be heard constitutes denial of due process of law.

176. Plaintiffs relied in good faith that the government defendants would act legally and ethically in resolving this dispute. The illegal and unethical conduct of the defendants to drag his matter out needlessly, merely to achieve the 'optics' they wanted, constitutes denial of plaintiffs' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

177. The defendants breached the duty owed the plaintiffs and willfully deprived them of their property and their right to be heard.

178. As a result of the defendants' conduct to deprive the plaintiffs of their due process rights, plaintiffs have suffered damages in excess of $250,000.00.

### 4. Violations of Plaintiffs' Fourteenth Amendment Right to Due Process and Equal Protection Under the Law

179. Plaintiffs incorporate by reference paragraphs 1 through 178 of this Complaint.

180. The conduct of the defendants to act in privity to willfully and maliciously participate in a "schemed plan" to engage in unwarranted and illegal domestic surveillance, harassment, intimidation and intentional emotional distress/bodily harm of plaintiffs without good cause violated their right to due process of law and equal protection under the Fourteenth Amendment to the United States Constitution.

181. The conduct of the defendants to participate in unwarranted and illegal domestic surveillance of

plaintiffs Farr and Reeves to deplete their income and assets and convert them to the government, refuse to arrest Alexandra Grant for her crimes, prevent any publicity, continually keep Farr and Reeves from meeting for a period of 22 months, acting to prevent their marriage on four occasions, allowing Grant to use DEW and terroristic threats to target Farr and torture Reeves as well as other parties and their families who were trying to assist them in their quest for freedom deprived plaintiffs of their right to equal protection under the Fourteenth Amendment to the Constitution pursuant to 42 USC 1983, 18 USC 242 and 18 USC 2441.

182. The defendants owed plaintiffs a duty not to violate their right to due process and equal protection under the above laws and exceeded the scope of the government defendants' employment/function.

183. The defendants' breached their duty owed to the plaintiffs.

184. As a result of the defendants' conduct in violating plaintiffs' right to due process and equal protection, she has suffered harm and damages in excess of $75,000.00.

## 5. Civil Conspiracy and/or Collusion

185. Plaintiffs incorporate by reference paragraphs 1 through 184 of this Complaint.

186. The conduct of the government defendants to act in privity and to willfully participate in the "schemed plan" to conduct surveillance of plaintiffs without good cause and without a warrant included telephone and computer monitoring, covert CIA operations to keep them from meeting, blocking Farr's Facebook page for months so that she could not post about events, keeping her from meeting or talking to Reeves by phone or in person, monitoring their emails constantly to keep them from meeting, intercepting money when he tried to send it to Farr, intentionally refusing her settlement requests and preventing all of the plaintiffs from meeting together to settle this case constitutes civil conspiracy and/or collusion.

187. By participating in the "schemed plan" to target plaintiffs in the above manner, the defendants acted in privity with the intent of engaging in illegal and unethical activities to deprive them of their property and convert their assets, prevent publicity so they could control the narrative, cause Farr and Reeves intentional emotional distress/bodily harm by targeting Farr with DEW to cause her cancer and other ailments and torture Reeves using CIA mind control, drugging him with Devil's Breath, threats to his family, tasering strangulation and poisoning his food for months, having full knowledge that such acts were

substantially certain to result in emotional distress/bodily injury/death and detriment to them.

188. The defendants conspired/colluded and acted in privity as part of a "schemed plan" spearheaded by Alexandra Grant, the CIA and ultimately President Trump to prevent Farr from meeting Reeves so she wouldn't win her case or help him file suit, cause them the aforementioned emotional distress/bodily harm, enslave and torture Reeves to the point of near death, and engage in deceptive acts of "bait & switch" to drag this matter out to avoid settlement pursuant to 42 USC 1983, 18 USC 242 and 18 USC 2441.

189. The conduct of the defendants was willful and with malice to violate plaintiffs' rights and cause them intentional emotional distress/bodily harm constitutes civil conspiracy and/or collusion and exceeds the scope of the government defendants' employment, authority and function.

190. The conduct of the defendants as set forth herein constitutes civil conspiracy/collusion.

191. As a result of the defendants' civil conspiracy and/or collusion, plaintiffs have been damaged in excess of $75,000.00.

**6. Fraud & Misrepresentation**

192. Plaintiff incorporates by reference paragraphs 1 through 191 of this Complaint in which fraud is stated with particularity as required by law.

193. The conduct of the defendants to act in privity and willfully participate in a "schemed plan" to use threats and intimidation, conduct illegal surveillance, scam Farr out of over $11,500, prevent her from meeting Reeves so she wouldn't win her case or help him file suit, prevent them from meeting with the Koch plaintiffs to settle and cause them the aforementioned emotional distress/bodily harm constitutes a knowing misrepresentation of the truth and concealment of material facts to induce plaintiffs to act to their detriment.

194. The overt acts of fraud engaged in by the defendants are stated under "Law and Analysis" and these were all intentional acts to keep plaintiff Joan Farr from winning her case and the public from knowing that the government had engaged in crimes against humanity toward her and Reeves for years.

195. At all relevant times, the above government defendants' participation in the "schemed plan" to target plaintiffs Farr and Reeves to cause them severe emotional distress and bodily harm was willful and wanton, and with full knowledge that such conduct was substantially certain to result in bodily injury and/or

death and detriment to the plaintiffs, and exceeded the scope of their employment, authority and function.

196. The government defendants' conduct constitutes fraud and intentional fraud.

197. As a result of the government defendants fraud and intentional fraud, plaintiffs have been damaged in excess of $75,000.00.

**7. Intentional Fraud**

. 198. Plaintiffs incorporate by reference paragraphs 1 through 197 of this Complaint, in which fraud is stated with particularity as required by law.

199. The conduct of the government defendants to deliberately devise a "schemed plan" with Reeves' attorneys and management to illegally convert his income and assets to fund the CIA and profit themselves by having Grant drug him into a contract, cause him to believe it was legal and valid, and enslave and torture him for over six years to ensure their money kept coming in through overt acts including phone calls, e-mails, communications, meetings and "mental processes" to cause him intentional emotional distress/bodily harm knew that this would result in severe mental anguish and detriment to Reeves.

200. The conduct of the government defendants to deliberately devise a "schemed plan" to illegally convert Farr's income and assets to fund the CIA and government agencies through overt acts including telephone calls, e-mails, communications, meetings and "mental processes" to ensure that Farr was prevented legal representation and publicity of her past cases and campaign efforts to hold office, block her emails to Reeves and wire transfers of money he tried to send her as well as block a $310K inheritance, intercept a FedEx package to replace it with fake cashier's checks to cause her intentional emotional distress/bodily harm knew that this would result in severe mental anguish and detriment to Farr.

201. The conduct of the government defendants to deliberately plan meetings with Farr and Reeves and then conspire to extort money from Farr so the meeting wouldn't take place through overt acts including telephone calls, e-mails, communications, meetings and "mental processes" to deceive them in numerous "bait & switch" knew that this would cause emotional distress and financial detriment to plaintiffs.

202. At all relevant times, the defendants knew that their "schemed plan" to steal Farr and Reeves' assets, cause them intentional emotional distress/bodily harm, and continually conducting "bait &

switch" to deceive them and drag this out to avoid settling was in bad faith and violated the duties of good faith and fair dealing toward them.

203. The defendants' conduct was to inflict emotional distress by abusing their power and discretion.

204. The conduct of the defendants constitutes intentional fraud.

205. As a result of the defendants' intentional fraud, plaintiffs have been damaged in excess of $75,000.00.

**8. Gross Negligence**

206. Plaintiffs incorporate by reference paragraphs 1 through 205 of this Complaint.

207. The failure of defendants President Donald Trump, United States Attorney General Todd Blanche, former United States Attorney General Pamela Bondi, Alexandra Grant, the DOJ, CIA, IRS, government actors and others to give plaintiffs the proper standard of care required of government leaders/state actors so that innocent people are not targeted, terrorized or tortured constitutes gross negligence.

208. The failure of the government defendants to bring charges of criminal fraud and negligence, as well as attempted murder, crimes against humanity including enslavement and torture, against Grant and other defendants in this matter constitutes gross negligence.

209. The government has a duty under the law to prosecute Alexandra Grant, former Attorney General Bondi, Reeves's former management and attorneys and others, and they have thus far failed to do so.

210. The failure of all of the government defendants to take appropriate legal action to protect the rights of plaintiffs and follow their own laws constitutes gross negligence.

211. As a result of the gross negligence of the above named defendants, plaintiffs have been damaged in excess of $75,000.00.

**9. Detrimental Reliance**

212. Plaintiffs incorporate by reference paragraphs 1 through 211 of this Complaint.

213. In seeking the assistance of all of the government defendants to settle this matter, plaintiffs relied

upon the representations of these defendants that they were competent and ethical government officials and agencies with considerable experience and knowledge.

214. In seeking government assistance, plaintiffs relied upon the representations of President Trump, former United States Attorney General Pamela Bondi, United States Attorney General Todd Blanche, the DOJ, CIA, IRS, Alexandra Grant, Grantlove LLC, government officials, "alphabet soup" agencies and others involved that they would not knowingly deplete their income and assets for their own gain and that the legal system provides "justice for *all,*" as stated in the Pledge of Allegiance.

215. Plaintiff Reeves relied upon the representations of the defendants and has lost well over $400 million dollars in assets and income, unimaginable revenue and profits from the movie about Farr's father he wanted to make, and the "right to life, liberty and the pursuit of happiness" after being enslaved for six years.

216. Plaintiff Farr relied upon the representations of the defendants and has lost over $1 million dollars in assets in the past nine months: $310K inheritance confiscated by the CIA, an estimated $10K in travel costs trying to help rescue Reeves, $109K to pay the IRS taxes she didn't really owe, $20K in antiques stolen in her estate sale, $500K on the sale of her home in Kansas to an investor, $102K on her Tulsa rental house that failed to close and $21K paid to Alexandra Grant so she would leave the country, but she did not.

217. Plaintiffs relied in good faith upon representations made by the above defendants.

218. Plaintiffs were justified in their reliance.

219. Plaintiffs relied to their detriment and as a result suffered damages in excess of $75,000.00.

**10. War Crimes Act of 1949/Crimes Against Humanity**

220. Plaintiffs incorporate by reference paragraphs 1 through 219 of this Complaint.

221. The conduct of the government defendants to deliberately devise a "schemed plan" with Reeves' attorneys, Grant and his management to illegally convert his income and assets for their own use, enslave and torture him until he nearly died, issue an erroneous and fraudulent National Security Letter against Farr without good cause and thereby deprive them of their property and the right to marry violated their right to "life, liberty and the pursuit of happiness" and is a violation of the War Crimes Act of 1949/ crimes against humanity.

222. The conduct of defendants to enslave and torture Reeves to the point of near death and target Farr with D.E.W. to cause her skin and breast cancer without due process of law constitutes a violation of the War Crimes Act of 1949/crimes against humanity/ 18 USC 2441.

223. The above defendants owed Farr and Reeves a duty not to violate their rights under the War Crimes Act as innocent American citizens and under the United States Constitution.

224. The government defendants acted with willful and wanton disregard for human life.

225. The defendants breached their duty owed the plaintiffs and caused them undue bodily harm.

226. As a result of the defendants' conduct to enslave and torture Reeves and target Farr with D.E.W. to cause their untimely deaths without due process of law, plaintiffs have suffered harm in excess of $250,000.00 each.

## 11. Outrageous Government Conduct Causing Intentional Infliction of Emotional Distress/Tort of Outrage

227. Plaintiff incorporates by reference paragraphs 1 through 226 of this Complaint.

228. The conduct of the defendants to act in privity and willfully participate in the "schemed plan" to threaten, intimidate and retaliate against plaintiffs Farr and Reeves was extreme and outrageous. Their conduct to engage in willful electronic surveillance of plaintiffs to violate their rights without good cause or a warrant included monitoring their telephones and computers, a covert CIA operation to scam them both out of their income and assets to cause them financial hardship, target Farr with D.E.W. to cause her skin cancer, breast cancer/Covid/Sepsis, threaten a 'grand attack' so she would lose her home and keep it from selling for a reasonable price, keeping Farr and Reeves from meeting so that she could not help him file suit and they could not have a physical relationship, prevent them from marrying on four separate occasions, prevent Reeves from "spilling the beans" to the media, keep him from ever endorsing Farr's run for president or fund her campaign, block their mail and emails to each other, enslave and torture Reeves by having Grant use CIA mind control, drug him repeatedly with Devil's breath, threaten his family, use physical abuse including strangulation and tasering, poison his food repeatedly until he nearly died constitutes civil conspiracy/ collusion and intentional infliction of emotional distress/tort of outrage.

229. The defendants' conduct to illegally target plaintiffs in the above manner to cause them intentional emotional distress and bodily harm without good cause was extreme and outrageous and exceeded the scope of the government defendants' official capacity of employment, authority and function.

230. By participating and conspiring in a "schemed plan" to enslave and torture Reeves, target Farr with D.E.W and convert nearly their entire income and assets to cause them severe emotional distress, mental anguish and bodily harm, the government defendants and state actors breached their duty owed the plaintiffs and deprived them of their Constitutional rights under color of law 42 USC 1983, 18 USC 242, 18 USC 2441. Their conduct was grossly disproportionate under such circumstances, and amounted to an abuse of power that shocks the conscience.

231. At all relevant times, their participation in the "schemed plan" to cause plaintiffs Farr and Reeves emotional distress and bodily harm was intentional, willful and malicious, and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to plaintiffs.

232. Due to the government defendants' and state actors' acts and failures to act, plaintiffs suffered severe emotional distress and bodily harm as a result of their participation in the "schemed plan" to cause them extreme pain and suffering which includes, but is not limited to: severe anxiety, paranoia, panic attacks, insomnia, extreme depression, severe mental anguish and other deteriorating health issues.

233. The conduct of the government defendants and defendant state actors was so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Reciting the facts in this matter to an average person causes resentment toward all defendants, and leads them to exclaim: "Outrageous!"

234. The outrageous conduct of the government defendants and other state actors constitutes intentional infliction of emotional distress / bodily harm and liability to plaintiffs for their injuries.

235. Due to the emotional distress resulting from the illegal acts and failures to act directed at Farr and Reeves by the government defendants and actors, plaintiffs have suffered severe emotional distress and bodily harm.

236. As a result of the outrageous conduct by all of the government defendants and state actors, plaintiffs Farr and Reeves have been damaged in excess of $250,000.000.

Respectfully submitted,

*Joan Farr*

Joan Farr, individually *pro se*, and Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant
P.O. Box 122
Webb City, MO 64870
Phone: 316.237.3738
Email: Joan@JoanFarr.com

**DESIGNATION OF TRIAL**

Plaintiff designates Springfield, Missouri as the location for the trial in this matter.

Respectfully submitted,

*Joan Farr*

Joan Farr, individually *pro se*, and Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant
P.O. Box 122
Webb City, MO 64870
Phone: 316.237.3738
Email: Joan@JoanFarr.com

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

Respectfully submitted,

*Joan Farr*

Joan Farr, individually *pro se*, and Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant
P.O. Box 122
Webb City, MO 64870
Phone: 316.237.3738
Email: Joan@JoanFarr.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November 2026, a copy of the above and foregoing Complaint and Summonses were filed with the United States District Court for the Western District of Missouri, and copies deposited in the United States mail, certified, return receipt and properly addressed, to:

United States Government
Attn: U.S. Atty. Ryan Kriegshauser
Charles Evans Whittaker Courthouse
U.S. Attorney's Office Rm. 510
400 East Ninth Street
Kansas City, MO 64106

President Donald J. Trump
The White House
1600 Pennsylvania Avenue
Washington, D.C. 20500

Department of Justice
Attn: U.S. Atty. Gen. Todd Blanche
950 Pennsylvania Ave. NW
Washington, D.C. 20530

U.S. Atty. Gen. Todd Blanche
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Pamela Bondi
901 South Rome Avenue
Tampa, FL 33606

Central Intelligence Agency
Attn: Director John Ratcliffe
1000 Colonial Farm Road
Langley, VA 22152

Alexandra Grant
9024 Thrasher Avenue
Los Angeles, CA 90069

GrantLove, LLC
Attn: Alexandra Grant
9024 Thrasher Avenue
Los Angeles, CA 90069

Federal Bureau of Investigation
Attn: FBI Director Kash Patel
935 Pennsylvania Avenue N.W.
Washington, D.C. 20530

Internal Revenue Service
IRS Office of Chief Counsel Kevin Salinger
1111 Constitution Avenue NW
Washington, D.C. 20224

Joan Farr

Joan Farr, individually *pro se*, and Keanu Reeves, individually *pro se*, by and through Joan Farr as his Manager/Legal Assistant/Personal Assistant
P.O. Box 122
Webb City, MO 64870
Phone: 316.237.3738
Email: Joan@JoanFarr.com

STATE OF MISSOURI }
} ss:
JASPER COUNTY }

BE IT REMEMBERED that on this 16th day of November 2026, Joan E. Farr, personally known to me to be the person who executed the foregoing instrument of writing. IN TESTIMONY WHEREOF, I have hereunto set my hand and notarial seal for the above county and state, the day and year above written.

Jacob L Johnson
Notary Public

My appointment expires: 09-15-2028

JACOB L JOHNSON
Notary Public, Notary Seal
State of Missouri
Jasper County
Commission # 20028796
My Commission Expires 09-15-2028